**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

TYRONE PRINCE, et al. on behalf of
themselves and all similarly-situated persons,

                                           Case No. 1:16-cv-1477-CKK

                Plaintiffs,

       vs.

ARAMARK CORPORATION, et al.,

                Defendants.
_____/

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**CONSENT MOTION FOR FINAL APPROVAL OF SETTLEMENT**

## TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................ 1

II.  STATEMENT OF PROCEDURE AND FACTS ...................................................... 1

III.  PROPOSED SETTLEMENT ................................................................................ 4

IV.  ARGUMENT ......................................................................................... 7

   A.  The Court Should Finally Certify The Proposed Class For Purposes Of Settlement
   Because The Standards Of Rule 23 Are Met. .................................................. 7

   B.  The Court Should Approve The Settlement Of The Lawsuit As Fair, Adequate And
   Reasonable. ........................................................................................ 8

       1.  The Settlement Resolves a Bona Fide Dispute. .................................... 10

       2.  The Settlement Agreement is Fair, Reasonable, and Adequate. ........................ 10

       3.  The Request for Named Plaintiffs' Service Payment is Reasonable. .................. 14

   D.  The Request for Attorneys' Fees and Costs is Reasonable ................................... 14

VI.  CONCLUSION ........................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**

*Carrillo v. Dandan Inc.*, 51 F. Supp. 3d 124 (D.D.C. 2014)..........................................9, 10

*Ceccone v. Equifax Info. Servs. LLC*, No. 13-CV-1314 KBJ, 2016 WL 5107202 (D.D.C. Aug. 29, 2016)..................................................................................................11

*Cohen v. Chilcott*, 522 F. Supp. 2d 105 (D.D.C. 2007) .....................................9, 10, 12, 14

*Emmons v. Quest Diagnostics Clinical Labs., Inc.,* No. 1:13-cv-00474-DAD-BAM, 2016 WL 3418452 (E.D. Cal. June 22, 2016)...............................................................6

*Flores v. Alameda County Industries Inc.*, No. 14-cv-03011-JD, 2015 WL 7180607 (N.D. Cal. Nov. 16, 2015) .......................................................................................6

*Girault v. Supersol 661 Amsterdam, LLC*, No. 11 Civ. 6835(PAE), 2012 WL 4748101 (S.D.N.Y. Oct. 4, 2012) ......................................................................................6

*Henry v. Little Mint, Inc.*, No. 12 Civ. 3996(CM), 2014 WL 2199427 (S.D.N.Y. May 23, 2014).................................................................................................................6

*In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100 (D.D.C. 2004) .................................13

*Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354 (D.D.C. 1983) .................................16

*Lazarin v. Pro Unlimited, Inc.*, No. C11–03609 HRL, 2013 WL 3541217 (N.D. Cal. July 11, 2013)...............................................................................................................6

*Lynn's Food Stores, Inc. v. United States*,  679 F.2d 1350 (11th Cir. 1982) .....................9

*Ortiz v. Chop't Creative Salad Co. LLC*, No. 13 Civ. 2541(KNF), 2014 WL 1378922 (S.D.N.Y. Mar. 25, 2014)..................................................................................6

*Richardson v. L'Oreal USA, Inc.*, 951 F. Supp. 2d 104 (D.D.C. 2013)............................14

*Sarceno v. Choi*, 78 F. Supp. 3d 446 (D.D.C. 2015)............................................................9

*Sarkisov v. StoneMor Partners L.P.*, No. 13-cv-04834-JD, 2015 WL 5769621 (N.D. Cal. Sept. 30, 2015) ...................................................................................................6

*Thomas v. Albright*, 139 F.3d 227 (D.C. Cir. 1998)..........................................................11

*Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1 (D.D.C. 2008) .............................................13

**Statutes**

29 U .S.C. §201 *et seq.* ....................................................................................2

D.C. Code § 2–220.01 *et seq.*............................................................................2

D.C. Code § 32–1001 *et seq.*............................................................................2

D.C. Code § 32–1301, *et seq.*............................................................................2

**Regulations**

Fed. R. Civ. P. 23...................................................................................2, 9, 11

Plaintiffs, by and through undersigned counsel, with the consent of Defendants, move the Court for an Order (1) finally certifying the class for settlement purposes only; (2) granting final approval of the Settlement Agreement (attached to the Motion as Exhibit A); (3) ordering distribution of the settlement proceeds pursuant to the Settlement Agreement; (4) approving the award of attorney's fees to class counsel pursuant to the Settlement Agreement; and (5) dismissing the case with prejudice.  In support thereof, Plaintiffs state as follows:

## I.    INTRODUCTION

The Parties have resolved the claims at issue in the above-captioned case (the "Lawsuit") by negotiating a proposed settlement that embodies reasonable compromises that are fair to the Parties and are in the best interests of the Plaintiffs and class members. The proposed settlement is the result of months of extensive arms-length negotiations among the Parties.  The proposed settlement reflects a desire by the Parties to fully and finally settle and compromise all claims in the Lawsuit, as outlined more specifically in the proposed settlement agreement (the "Settlement Agreement," attached hereto as Exhibit A).  No objections to the proposed settlement have been filed.  Plaintiffs, with the consent of Defendants, now ask this Court to finally certify a class for purposes of settlement only, to finally approve the Settlement Agreement, to order distribution of the settlement proceeds, and to approve the award of attorney's fees to class counsel.

## II.   STATEMENT OF PROCEDURE AND FACTS

On July 19, 2016, Plaintiffs Tyrone Prince, De'Lonn Hardie, Kierra Oliver, and Gary McNair El filed a Complaint on behalf of themselves and all similarly-situated

housekeeping employees of Defendants at the Walter E. Washington Convention Center, alleging violations of the Fair Labor Standards Act, 29 U .S.C. §201 *et seq.* (the "FLSA claims"); the District of Columbia Living Wage Act, D.C. Code § 2–220.01 *et seq.*; the District of Columbia Minimum Wage Revision Act, D.C. Code § 32–1001 *et seq.*; the District of Columbia Wage Payment and Collection Law, D.C. Code § 32–1301, *et seq.*; and District of Columbia common law (the "District of Columbia Claims"). Specifically, Plaintiffs claim that Defendants failed to pay them overtime and non-overtime compensation at the living wage rate required by the District of Columbia Living Wage Act and the minimum wage required by the District of Columbia Minimum Wage Revision Act. The FLSA claims are brought as a collective action. The District of Columbia claims are maintained as a class action under Fed. R. Civ. P. 23. Defendants deny all material allegations in Plaintiffs' Complaint.

Shortly after Plaintiffs filed their Complaint, they moved for conditional certification of a collective action pursuant to the FLSA. [Dkt. # 8]. By joint status report filed January 26, 2017, the parties reported that this motion is moot as superseded by the parties' Consent Motion for Preliminary Approval of Settlement. [Dkt. # 31]. Since the filing of the Lawsuit, 64 similarly-situated employees opted in by filing Consents to Join. There are now 68 Plaintiffs in the Lawsuit (named Plaintiffs Prince, Hardie, Oliver, McNair El, and 64 "opt-in" Plaintiffs).

With Plaintiffs' consent, Defendants sought and obtained extensions to respond to Plaintiffs' Complaint and conditional certification motion for the purpose of engaging in settlement discussions. The parties exchanged informal discovery of payroll data,

2

damages calculations, and other information to facilitate negotiations.  Defendants produced sufficient payroll records to permit Plaintiffs to assess liability and approximate damages.  Over the course of several months, the Parties participated in arms-length settlement negotiations and, as a result of such negotiations, agreed to settle both the FLSA collective action and all class claims under District of Columbia law.

On November 18, 2016, Plaintiffs filed a Consent Motion for Preliminary Approval of Settlement.  On November 22, 2016, Plaintiffs filed a Consent Motion to Substitute Exhibit A to the Memorandum of Points and Authorities in Support of the Consent Motion for Preliminary Approval of Settlement.  By Order dated March 14, 2017, the Court granted preliminary approval of the settlement and certification of the settlement class. [Dkt. #32.]  The March 14, 2017 Order appointed attorneys Mark Hanna and Michelle Banker of the law firm Murphy Anderson PLLC as class counsel and approved the proposed "Notice of Class Action Lawsuit And Proposed Settlement" to be disseminated to potential class members ("Notice").  [Dkt. # 32.]  On April 5, 2017,[1] class counsel mailed the Notice to potential class members by U.S. Mail, with objections due by May 5, 2017.[2]  The Court is scheduled to hold a Fairness Hearing on the settlement on May 22, 2015.

---

[1] The Court granted class counsel a two-day extension to mail the Notice to potential class members at the Parties' request.

[2] There is a discrepancy between the Settlement Agreement, the Court's March 14 Order, and the Consent Memorandum of Points and Authorities in Support of Preliminary Approval of Settlement.  The memorandum incorrectly stated that the Notice would be sent to potential class members in English and Spanish. This was, however, not a term of the Settlement Agreement nor was it part of the Court's March 14 Order (or the Proposed Order).  Per the Settlement Agreement and the March 14 Court Order, the Notice was

### III.   PROPOSED SETTLEMENT

As set forth in the Settlement Agreement attached as Exhibit A, Defendants agree to provide both prospective relief and monetary payment to settle this Lawsuit:

First, effective November 16, 2016 wages of all employees of the Defendants at the Walter E. Washington Convention Center were set at no less than the applicable living wage rate required by the District of Columbia Living Wage Act.

Second, Defendants agree to pay a maximum of $466,250.00 plus the costs of claims administration and any amount of the employers' share of payroll taxes in full satisfaction of Plaintiffs' claims for damages, liquidated damages, and attorneys' fees and costs.  This amount consists of $373,250.00 to be paid to class members, additional service payments to each of the four named Plaintiffs of $1,000.00 of non-wage income in consideration for their time and effort in prosecuting this Lawsuit, and $89,000.00 to satisfy Plaintiffs' claims for attorneys' fees and costs.  One-half of the $373,250.00 will be treated as back pay and will be subject to regular and/or applicable payroll and income tax withholdings, and will be reported on an IRS Form W-2, and one-half will be treated as non-wage liquidated damages.

The Parties have agreed, as part of the Settlement Agreement, to request that the Court certify a class defined as all current and former employees of Defendants and their predecessors, assigns, and/or related companies who worked at the Walter E. Washington Convention Center ("Washington Convention Center") at any time between July 19, 2013

---

sent to class members in English.  In this union-represented workforce with high employee engagement, a Spanish language notice is not critical.

through November 16, 2016 and were not classified as salaried, exempt employees.  The class includes, but is not limited to, all persons employed as housekeeping aides or similar positions.

Each eligible class member who has not "opted out" will receive an agreed-upon settlement payment that is a pro rata share of the $373,250.00 based on that class member's share of total estimated damages for the class, except that each class member who has not "opted out" of the settlement will receive a minimum payment of $100.00.  Class members need not submit a claim to receive their settlement payment; rather, Defendants will issue checks to all members who have not opted out of the Lawsuit.

Plaintiffs' counsel calculated each class member's settlement payment based on each class member's estimated damages, subject to the requirement that no settlement payment shall be less than $100.00.  Attached to the Motion as Exhibit B is a spreadsheet of the settlement payments owed to each class member.  Each class member's estimated damages were calculated by adding estimated straight time damages and estimated overtime damages.  Estimated straight time damages were calculated by subtracting each employee's actual wage rate from the then-applicable living wage rate and multiplying by the hours worked.  Estimated overtime damages were calculated by subtracting each employee's actual overtime compensation from 1.5 times the then-applicable living wage rate for each overtime hour worked.  Pro rata calculations were prepared by dividing each class member's estimated damages by the combined total of all estimated damages for the class and multiplying the resulting figure by $373,250.00.  Only those individuals

who both opted out of the class and have not opted in to the FLSA action will forfeit payment and not be bound by the terms of this Settlement Agreement.

In exchange for these payments, class members who have not opted-out of the Lawsuit will release Defendants and their predecessors, assigns, and/or related companies from all wage and hour and pay-related claims—whether known or unknown and whether anticipated or unanticipated—under the FLSA, District of Columbia law, or any other federal, state, and/or local laws that were or could have been asserted in this Lawsuit and that accrued as of November 16, 2016.[3]  Any class member who has already opted-in to this action and/or negotiates his or her settlement payment check will be considered to have opted in to the FLSA collective action and subject to the release of claims under the FLSA.[4]  Plaintiffs agree to voluntarily dismiss all claims stated in this Lawsuit against Defendants on a class-wide basis, with prejudice.

Any class member who opted out of the Lawsuit forfeits his or her settlement payment, which will revert back to Aramark Facility Services, LLC.  The Claims Administrator will make no more than two mailing attempts.   Any settlement payment

---

[3] These claims are further detailed in Paragraph 2.23 of the parties' Agreement.  *See* Ex. A.

[4] This is a common procedure for efficiently resolving claims.  *See, e.g.*, *Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 1:13-cv-00474-DAD-BAM, 2016 WL 3418452, at *7 (E.D. Cal. June 22, 2016); *Flores v. Alameda County Industries Inc.*, No. 14-cv-03011-JD, 2015 WL 7180607 *2, (N.D. Cal. Nov. 16, 2015); *Sarkisov v. StoneMor Partners L.P.*, No. 13-cv-04834-JD, 2015 WL 5769621, *2 (N.D. Cal. Sept. 30, 2015); *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996(CM), 2014 WL 2199427, at *3 (S.D.N.Y. May 23, 2014); *Ortiz v. Chop't Creative Salad Co. LLC*, No. 13 Civ. 2541(KNF), 2014 WL 1378922, at *15-16 (S.D.N.Y. Mar. 25, 2014); *Lazarin v. Pro Unlimited, Inc.*, No. C11–03609 HRL, 2013 WL 3541217, at *2 (N.D. Cal. July 11, 2013); *Girault v. Supersol 661 Amsterdam, LLC*, No. 11 Civ. 6835(PAE), 2012 WL 4748101, at *2 (S.D.N.Y. Oct. 4, 2012).

not negotiated by the recipient class member within 120 calendar days from the date of

issuance of the check shall be voided and revert back to Aramark Facility Services, LLC.

If within the 120-day period a class member reports that he or she never received the

payment, the check will be reissued upon confirmation that it was not cashed.

Reissuance will not restart the 120-day period.

The Parties will use a Claims Administrator to issue the settlement checks.

Defendants will bear the costs of administration.

In reaching this proposed settlement, the Parties and their counsel have considered

the interests of all concerned and are in agreement that those interests are best served by

compromise, settlement, and dismissal of all of the Plaintiffs' claims with prejudice.  The

Parties have also agreed that the proposed settlement is fair, reasonable, adequate, and in

the Parties' mutual best interests.  For the reasons set forth below, Plaintiffs respectfully

request that the Court enter an Order granting final certification of the class, final

approval of the settlement as fair, adequate and reasonable, and approval of the payment

of attorneys' fees and costs to class counsel pursuant to the Settlement Agreement.[5]

## IV.    ARGUMENT

### A.    <u>The Court Should Finally Certify The Proposed Class For Purposes Of Settlement Because The Standards Of Rule 23 Are Met</u>.

For the reasons set forth in Plaintiffs' Consent Motion for Preliminary Approval of

Settlement and the Court's Memorandum Opinion in Support of its March 14, 2017

---

[5] Defendants maintain that class treatment would be inappropriate were this matter to proceed in litigation.  Nonetheless, Defendants have agreed to class certification at this stage for the sole purpose of settlement and to avoid the uncertainties of additional litigation of this matter.

Order [Dkt. #33], the Court should finally certify a class for the purpose of settling the District of Columbia claims that consists of all current and former non-exempt employees of Defendants and their predecessors, assigns, and/or related companies who worked at the Washington Convention Center at any time between July 19, 2013 and November 16, 2016 for settlement purposes only.

The only factual change since the Court rendered its March 14, 2017 opinion is that the class consists of 169 persons instead of the 174 persons estimated in the Motion for Preliminary Approval. This class size is still well in excess of the number courts in the D.C. Circuit have approved in class actions.  *See, e.g.*, *Alvarez v. Keystone Plus Constr. Corp.*, 303 F.R.D. 152, 160 (D.D.C. 2014) ("Courts in this District have generally found that the numerosity requirement is satisfied and that joinder is impracticable where a proposed class has at least forty members"); *Equal Employment Opportunity Comm'n v. Printing Indus. of Metro. Washington, D.C., Inc. (Union Emp. Div.)*, 92 F.R.D. 51, 53 (D.D.C. 1981) ("[A]s few as 25-30 class members should raise a presumption that joinder would be impracticable, and thus the class should be certified"). Moreover, no class members have raised an objection about the propriety of class certification.  Accordingly, for all the reasons already found by the Court, the parties jointly request that this Court finally certify the class for purposes of settlement only.

### B.  <u>The Court Should Approve The Settlement Of The Lawsuit As Fair, Adequate And Reasonable.</u>

The Parties seek the Court's final approval of the settlement for both the FLSA claims and District of Columbia class claims.  With regard to the FLSA claims, although

the "D.C. Circuit has not opined about whether judicial approval is required of FLSA settlements reached after a FLSA suit has been filed," courts in this District routinely provide such approval to prevent uncertainty about the enforceability of the agreement. *Sarceno v. Choi*, 78 F. Supp. 3d 446, 449 (D.D.C. 2015); *Carrillo v. Dandan Inc.*, 51 F. Supp. 3d 124, 130 (D.D.C. 2014).   While the D.C. Circuit has yet to establish any particular factors a court is required to consider, courts in this Circuit generally follow the reasoning of *Lynn's Food Stores, Inc. v. United States*,  679 F.2d 1350, 1353-54 (11th Cir. 1982).  *See Carrillo*, 51 F. Supp. 3d at 130.  In so doing, courts consider whether a "proposed settlement is 'a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Id.* at 130-31, *quoting Lynn's Food Stores*, 679 F.2d at 1353, 1355.

With regard to the District of Columbia claims, Rule 23(e) provides that "a class action shall not be dismissed or compromised without the approval of the court."  The standard to be used in approving a class action settlement is whether it is fair, reasonable and adequate.  *Alvarez*, 303 F.R.D. at 163. "[C]ourts in this circuit generally consider five factors: (1) whether the settlement is the result of arm's-length negotiations; (2) the terms of the settlement in relation to the strengths of plaintiffs' case; (3) the status of the litigation proceedings at the time of settlement; (4) the reaction of the class; and (5) the opinion of experienced counsel." *Id.*  "[T]here is a long-standing judicial attitude favoring class action settlements, and the Court's discretion is constrained by the principle of preference favoring and encouraging settlement in appropriate cases." *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 114 (D.D.C. 2007) (internal quotation marks omitted).  Courts presume that a class settlement reached through "arm's-length negotiations between

experienced, capable counsel after meaningful discovery" is fair, adequate, and reasonable.  *Id.*

### 1.     The Settlement Resolves a Bona Fide Dispute.

A proposed settlement is "bona fide" if it "reflects a reasonable compromise over issues that are actually in dispute." *Carrillo*, 51 F. Supp. 3d at 132.  Plaintiffs maintain that Defendants were legally and contractually obligated to pay regular and overtime compensation based on an hourly wage at least equal to the District of Columbia living wage rate.  [Complaint, Dkt. #1.]  Defendants generally deny the allegations in the Lawsuit, including whether they were required to pay the class members the living wage and whether this Lawsuit is appropriate for class or collective action certification. [Settlement Agreement, Exh. A, ¶¶ 1.2; 5.1-5.3.] There is a *bona fide* dispute between the Parties as to the merits of this litigation.

### 2.     The Settlement Agreement is Fair, Reasonable, and Adequate.

#### a.     The settlement resulted from arm's-length negotiations.

The proposed Settlement Agreement is the result of extensive arm's-length negotiations that took place over several months.  Both sides were represented by experienced counsel throughout this process.  Defendants provided payroll data that permitted Plaintiffs to meaningfully assess their claim for damages owed to the entire class.  The Parties exchanged data and information during negotiations permitting each side to assess the relative merits of the claims and defenses in this Lawsuit.  There was no collusion between the Parties.  As in *Alvarez*, this weighs in favor of approval of the settlement.  *See Alvarez*, 303 F.R.D. at 163 (finding arm's length negotiations where the

parties engaged without collusion in "months of back-and-forth between experienced

counsel," "informed by robust informal discovery," resulting in "quick and fair relief").

> **b.**     **The settlement terms are reasonable in relation to the strength of Plaintiffs' case and the *bona fide* disputes.**

Under the second factor, the Court must compare the "terms of the settlement with

the likely recovery plaintiffs would attain if the case proceeded to trial, an exercise which

necessarily involves evaluating the strengths and weaknesses of plaintiffs' case."

*Ceccone v. Equifax Info. Servs. LLC*, No. 13-CV-1314 KBJ, 2016 WL 5107202, at *9

(D.D.C. Aug. 29, 2016).  This evaluation is the Court's "primary task" under Rule 23(e).

*Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998).

This matter requires resolution of complex legal and factual issues, in particular

the appropriateness of class or collective action certification, whether Defendants must

pay their employees the District of Columbia living wage by virtue of law or contract,

and the amount of damages and liquidated damages potentially available to Plaintiffs.

Defendants also would challenge whether the alleged violation was willful, which could

reduce the class period from three to two years.  The Court in *Alvarez* held that similar

circumstances supported the reasonableness of the settlement.  *See Alvarez*, 303 F.R.D. at

163–64.

This settlement will enable the Parties to avoid anticipated burdens and expenses

in establishing their respective claims and defenses.  Most crucially, this settlement has

already resulted in an increase of wages to comply with the living wage effective

November 16, 2016.  Moreover, the $373,250.00 payment to Plaintiffs is a reasonable

settlement given Plaintiffs' calculation of estimated actual damages of approximately

$343,000.00 for the three-year period from July 19, 2013 through July 14, 2016 and

approximately $349,000 for the period from July 19, 2013 through November 16, 2016.

The payments to class members will be essentially automatic in the sense that class

members are not required to submit claim forms in order to receive a settlement payment.

All class members who do not opt out will receive a settlement payment check.

     The settlement is intended to provide class members with immediate wage

increases and over 100% compensation for the damages incurred without the need for

lengthy litigation or the uncertainty of a trial and uncertain results.  The terms of the

proposed settlement adequately and fairly compensate class members in light of the

uncertainty of their recovery in litigation.  *See Alvarez*, 303 F.R.D. at 164.

### c.     **The settlement was reached after the Parties engaged in informal discovery permitting assessment of the merits.**

     This is an appropriate juncture in the litigation to settle.  In determining the

fairness of a settlement, courts "consider whether counsel had sufficient information,

through adequate discovery, to reasonably assess the risks of litigation vis-a-vis the

probability of success and range of recovery." *Cohen*, 522 F. Supp. 2d at 117.  Although

the Parties have not engaged in formal discovery, they engaged in extensive informal

discovery, including the exchange of payroll records and other information.  This

informal discovery was sufficient to allow the Parties to assess the relative merits of their

respective cases and determine the propriety of settlement. *See Alvarez*, 303 F.R.D. at

164 (finding settlement appropriate where parties "engaged in significant informal

discovery, including the exchange of payroll records and documents," which was "sufficient to give them a reasonably accurate assessment of the case").

Engaging in additional formal discovery, motions practice, and potentially trial will be costly for both sides and will further defer closure.  The amount of fees that will accrue from additional litigation will unnecessarily dwarf any potential damage award. Any judgment will likely be appealed, thereby extending the duration of the litigation and exposing both sides to unnecessary risk.  Settling the case now also guaranteed that the class members received an immediate increase in their wages to the living wage rate in addition to compensation for their claims.  For these reasons, "the settlement 'do[es] not come too early to be suspicious nor too late to be a waste of resources,' but rather occurs 'at a desirable point in the litigation for the parties to reach an agreement and to resolve these issues without further delay, expense, and litigation.'"  *Alvarez*, 303 F.R.D. at 164, *citing In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 105 (D.D.C. 2004).

### d.        The reaction of the class to the settlement.

No class members have filed an objection to the settlement, and only two class members opted-out of the settlement. This factor weighs in favor of approving the settlement. *See Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 5 (D.D.C. 2008) (approving settlement where no objections were filed and only one person chose to opt out).

### e.        Experienced counsel negotiated the Settlement Agreement and believe it to be fair, reasonable, and adequate.

Both Parties' counsel are experienced in collective and/or class action litigation, and were involved in the extensive arms-length negotiation of which the proposed

settlement is a product.  Counsel for both Parties believes that the settlement reached is fair, reasonable, and adequate.  This opinion "should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *Alvarez*, 303 F.R.D. at 164, *citing Cohen*, 522 F. Supp. 2d at 121.

### 3.     The Request for Named Plaintiffs' Service Payment is Reasonable.

As set forth in the Court's Memorandum of Law in support of its March 14 Order, the $1,000 service payments for the four named Plaintiffs, Tyrone Prince, De'Lonn Hardie, Kierra Oliver, and Gary McNair El is both customary and reasonable.  *See* Dkt. 33 at 7 (citing *Richardson v. L'Oreal USA, Inc.*, 951 F. Supp. 2d 104, 108 (D.D.C. 2013) ("The nominal incentive payments of up to $1000 for the lead plaintiffs appear reasonable.")).

The named Plaintiffs expended substantial time and effort assisting class counsel in the investigation of the facts underlying the claims in this lawsuit, obtaining consents to join from other opt-in Plaintiffs, and drafting declarations in support of the motion for conditional certification of a collective action. The $1,000 service payment is more than reasonable to compensate the named Plaintiffs for this time and effort and should be approved.

### D.     The Request for Attorneys' Fees and Costs is Reasonable

The Settlement Agreement calls for the payment of $89,000 to class counsel in satisfaction of Plaintiffs' claims for attorneys' fees and costs.  This amount is less than

half of the total attorneys' fees and costs Plaintiffs incurred in prosecuting this litigation and is therefore both fair and reasonable.

As of May 3, 2017, class counsel expended 420.4 attorney hours and 186.3 paralegal and law clerk hours in this matter and incurred costs of $2,766.09 in filing and service of process fees, legal research fees, postage, and travel costs for meetings with Plaintiffs.  (Banker Dec., ¶¶ 3, 4, 7.)  Applying the 2016-2017 Laffey Matrix, this amounts to attorneys' fees and costs of approximately $191,517.[6]  (Banker Dec. ¶¶ 5-7.).

Class counsel spent significant time investigating the claims prior to bringing suit; interviewing Plaintiffs; meeting with Plaintiffs; researching novel issues in wage-and-hour law; reviewing and analyzing Defendants' payroll records; and drafting the Complaint, the motion to conditionally certify the FLSA claims as a collective action, the motion for preliminary approval of the settlement, the Notice to the class, and the instant motion for final approval.  Class counsel expended substantial time negotiating principle settlement terms with Defendants' counsel.  After reaching a settlement in principle, class counsel engaged in extensive negotiations over the terms of the Settlement Agreement. (Banker Dec. ¶ 3.)

Throughout the litigation, law clerks and paralegals spent significant time engaging with the Plaintiffs, including attending meetings of Plaintiffs and fielding phone calls from class members.  Law clerks and paralegals provided essential assistance translating documents, reviewing and analyzing Defendants' payroll records,

---

[6] For the Court's convenience, the 2015-2017 Laffey Matrix is available here: https://www.justice.gov/usao-dc/file/889176/download.

programming formulae to prepare damages calculations and settlement payment amounts for Plaintiffs, and assisting in preparing the motion to conditionally certify the FLSA claims as a collective action.  (Banker Dec. ¶ 4.)

The payment of $89,000 in attorneys' fees and costs will compensate class counsel at a rate that is below the normal *Laffey* Matrix rate that class counsel have been awarded in employment cases and that has been cited by courts as good evidence of the market rate for attorneys practicing in employment law cases.  (Banker Dec., ¶¶ 5-6.) *See Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354, 371 (D.D.C. 1983).

Class counsel, with a great deal of experience in the prosecution and resolution of class actions and collective action litigation, has carefully evaluated the merits of this case and the proposed settlement.  Even if the matter were to proceed to trial, class counsel acknowledges that there is no guarantee against a complete or partial defense verdict and that even if a judgment were obtained against Defendants at trial, the relief might be no greater, and indeed might be less, than that provided by the proposed settlement.  Therefore, the attorneys' fees that Defendants have agreed to pay pursuant to the Settlement Agreement are reasonable and necessary.

## VI.    CONCLUSION

WHEREFORE, for the forgoing reasons, the Plaintiffs and Defendants respectfully request that this Court issue an Order:

1.    Finally certifying a class for purposes of settlement only;

2.    Granting final approval of the Settlement Agreement;

3.      Ordering Defendants to distribute all proceeds to the Plaintiffs pursuant to the Settlement Agreement;

4.      Ordering that Defendants distribute to class counsel payment of attorneys' fees and costs pursuant to the Settlement;

5.      Dismissing the case with prejudice;

6.      Retaining jurisdiction of the case for purposes of enforcing the Settlement.


Dated:  May 13, 2017                    Respectfully submitted,

                                        s/ Michelle Banker
                                        Mark Hanna (Bar No. 471960)
                                        Michelle Banker (Bar No. 1003535)
                                        Murphy Anderson PLLC
                                        1401 K Street NW, Suite 300
                                        Washington, DC 20005
                                        tel: (202) 223-2620
                                        fax: (202) 296-9600

                                        *Counsel for the Plaintiffs*