**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TYRONE PRINCE, *et al.*,<br>Plaintiffs<br>v.<br>ARAMARK CORP., *et al.*,<br>Defendants. | Civil Action No. 16-cv-1477 (CKK) |

**MEMORANDUM OPINION**
(June 30, 2017)

    Plaintiffs in this case are housekeeping employees at the Walter E. Washington Convention Center ("Washington Convention Center") who have sued their employers for unpaid wages and overtime compensation under the Fair Labor Standards Act ("FLSA"), the District of Columbia Minimum Wage Revision Act ("Minimum Wage Act"), the District of Columbia Living Wage Act ("Living Wage Act"), the District of Columbia Wage Payment and Collection Law ("Wage Payment Law"), and District of Columbia common law. Plaintiffs seek to represent a class of similarly-situated employees. Pending before the Court is Plaintiffs' [37] Consent Motion for Final Approval of Settlement ("Pls.' Mot."). Upon consideration of the pleadings, the relevant legal authorities, and the record for purposes of this motion, the Court will GRANT Plaintiffs' motion for final approval.

## I. BACKGROUND

**A. Factual and Procedural Background**

    Named Plaintiffs are housekeeping aides at the Washington Convention Center who are or were employed by Defendants. Compl., ECF No. 1, at ¶ 25. Plaintiffs allege that the wages they received from Defendants were below the minimum or living wage. *Id.* ¶ 33. Plaintiffs also contend that they worked over 40 hours per week without receiving the appropriate amount of

overtime compensation. *Id.* ¶¶ 41-43. Since the filing of this case, 64 similarly-situated employees have filed consents to join the lawsuit, such that there are now 68 Plaintiffs. *See Montes v. Janitorial Partners, Inc.*, No. 15-7107, 2017 WL 2602825, at *1 (D.C. Cir. June 16, 2017) ("the FLSA provides that '[n]o employee shall be a party plaintiff to [a collective] action unless he gives his consent in writing . . . and such consent is filed in the court in which such action is brought.'") (quoting 29 U.S.C. § 216(b)).

After the suit was filed and informal discovery was completed, the parties notified the Court that they had reached a settlement in principle. *See* Joint Status Report, ECF No. 27. Plaintiffs subsequently filed a Consent Motion for Preliminary Approval of Settlement, which the Court granted on March 14, 2017. *See* Memorandum Opinion and Order (March 14, 2017), ECF Nos. 32, 33. In its March 14, 2017 Memorandum Opinion and Order, the Court preliminarily certified the Plaintiff class for settlement purposes, appointed Plaintiffs' counsel as class counsel, preliminarily approved of the class settlement, approved of the agreed-upon notice to potential class members of the proposed settlement, and set a final hearing on the fairness of the settlement. *Id.* Class counsel subsequently sent the approved notice to the class members. *See* Affidavit of Michelle Banker, ECF No. 38.

On May 22, 2017, the Court held a final hearing on the fairness of the settlement. No objections to the settlement were presented. However, the parties notified the Court at that hearing that four class members had accidentally not received notice. The parties have subsequently informed the Court that those class members have now been given notice and have either affirmatively indicated that they do not object to the settlement, or have failed to object within the time frame provided to do so. In addition to mailing them notice of the settlement, class counsel spoke with three of these members over the phone and the members confirmed that they wanted

to be part of the class and had no objection to the class settlement. With respect to the fourth class member—who is currently employed by Aramark—in addition to mailing her notice of the settlement, both class counsel and Defendant Aramark have spoken with her over the phone. She neither indicated orally whether she would opt out or object to the settlement, nor did she indicate her preference in writing, but time has run out for her to do so.

### B. The Terms of the Settlement

The parties have submitted their proposed class settlement to the Court. *See* Joint Stipulation of Settlement, ECF Nos. 30-1, 37-2. The key terms of the parties' agreement are as follows.

First, the parties have agreed that the wages of all of Defendants' employees at the Washington Convention Center will be no less than the applicable living wage required by the Living Wage Act from November 16, 2016 forward. Second, Defendants have agreed to pay Plaintiffs a maximum of $466,250, plus the costs of settlement administration and any amount of the employers' share of payroll taxes. This $466,250 would be used to satisfy Plaintiffs' claims for damages, liquidated damages, attorneys' fees and costs. Of this amount, $373,250 will be paid to the class members as damages. The parties have agreed to request the Court certify a class for the purposes of settlement, and that each member of this class who does not opt out would receive a pro-rata share of the $373,250 based on his or her share of total estimated damages, with a minimum payment of $100. Further, a total of $4,000 of the $466,250 settlement will be paid to the named-Plaintiffs in consideration for their time and effort in prosecuting this lawsuit, and $89,000 will be paid to satisfy Plaintiffs' claims for attorneys' fees and costs.

In exchange for these payments, class members who did not opt out of the lawsuit will release Defendants, their predecessors, assigns, and/or related companies from all wage and hour

3

and pay-related claims under the FLSA, District of Columbia law, or any other federal, state, and/or local laws that were or could have been asserted in this lawsuit and that accrued as of November 16, 2016. Defendants deny all liability or wrongdoing and Plaintiffs agree to voluntarily dismiss with prejudice all claims stated in this lawsuit against the Defendants on a class-wide basis.

### III. DISCUSSION

The Court's Memorandum Opinion will proceed in three parts. First, the Court will grant final certification of the Plaintiff class for purposes of settlement. Second, the Court will approve of the proposed class settlement as fair, adequate, reasonable and not the product of collusion. Third, the Court will approve of the award of attorneys' fees to class counsel.

**A. Class Certification**

In its March 14, 2017 Memorandum Opinion and Order, the Court analyzed the factors set forth in Federal Rule of Civil Procedure 23 and preliminarily found that certification of the Plaintiff class for settlement purposes was warranted. The Court will not repeat the analysis in that Opinion here, but incorporates it by reference.

Nothing material has changed since the Court's March 14, 2017 Memorandum Opinion and Order that would lead the Court to conclude that class certification is not warranted. The class members have now been noticed, and none have objected to this case proceeding as a class action. The class now consists of 169 persons instead of 174 persons, but this number still easily satisfies Rule 23's numerosity requirement. *See Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007) ("courts in this jurisdiction have observed that a class of at least

forty members is sufficiently large to meet this requirement."). Accordingly, for the same reasons set forth in its earlier Opinion, the Court now grants final certification of the Plaintiff class for the purposes of settlement.

## B. Final Approval of Class Settlement

The Court also finds that the class settlement is fair and will accordingly grant the parties' motion for final approval. Federal Rule 23(e) states that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." There is a "long-standing judicial attitude favoring class action settlements." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 103 (D.D.C. 2004). However, "[b]efore it can approve a settlement a district court 'must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties.'" *Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998) (quoting *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977)). "[G]enerally, in determining whether a settlement is fair, reasonable, and adequate, courts in this Circuit have examined the following factors: (a) whether the settlement is the result of arms-length negotiations; (b) the terms of the settlement in relation to the strength of the case; (c) the stage of the litigation proceedings at the time of settlement; (d) the reaction of the class; and (e) the opinion of experienced counsel." *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 194 (D.D.C. 2011). "Approval of the proposed class action settlement lies within the discretion of this Court." *In re Vitamins*, 305 F. Supp. 2d at 103. As explained below, all of the relevant factors indicate that the

proposed settlement in this case is fair, adequate and reasonable and is not the product of collusion between the parties.

### 1. Whether the Settlement is the Result of Arms-Length Negotiations

First, the proposed settlement in this case appears to be the result of the arms-length negotiation of a *bona fide* dispute. "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery.'" *Id.* at 104 (quoting *Manual for Complex Litig.,* at § 30.42). The parties disagree as to the merits of Plaintiffs' claims and the Court has no reason to doubt that this dispute is *bona fide*. The parties represent that the settlement was the result of extensive negotiations over several months, aided by the exchange between the parties of informal discovery. Both sides were represented by counsel and the parties represent that there was no collusion. Nothing in the record contradicts these representations or leads the Court to question their accuracy.

### 2. The Terms of the Settlement in Relation to the Strength of the Case

Next, "[t]he Court must evaluate the relief provided in the proposed settlement against the relative strength of plaintiffs' case, including their ability to obtain recovery at trial." *Trombley*, 826 F. Supp. 2d at 195. Plaintiffs have calculated that the class' actual damages are approximately between $343,000 and $349,000. Pls.' Mot. at 12. The settlement will provide the class with $373,250 to compensate for these damages and an immediate increase in wages going forward. It will also provide named-Plaintiffs with reasonable $1,000 payments in consideration for their time and effort in prosecuting this lawsuit. *See Richardson v. L'Oreal USA, Inc.*, 951 F. Supp. 2d 104, 108 (D.D.C. 2013) ("The nominal incentive payments of up to $1000 for the lead plaintiffs appear reasonable.").

Although Plaintiffs are giving up the potential to obtain additional damages at trial that may be available under their various statutory causes of action, this settlement is reasonable because it enables Plaintiffs to avoid the burden, expense and delay of litigation. The parties also represent that the result of this litigation would be uncertain if it went forward, given that Defendants would deny and litigate the merits of Plaintiffs' claims, would challenge the appropriateness of class certification, and would argue that any violation on their part was not willful, which could reduce the length of the class period. *See Alvarez v. Keystone Plus Constr. Corp.*, 303 F.R.D. 152, 164 (D.D.C. 2014) (finding that possible recovery of liquidated damages for wage claims "would ultimately be somewhat discounted, given the uncertainty of recovering such damages and the time and money that it would have taken to litigate this case to a verdict."); *In re LivingSocial Mktg. & Sales Practice Litig.*, 298 F.R.D. 1, 12 (D.D.C. 2013) ("benefits to the class must be considered in juxtaposition with the risks attendant to continued litigation of this matter"). With all of these considerations in mind, the Court has concluded that the proposed settlement "falls within the range of fair, adequate and reasonable settlements deserving of final approval." *In re Vitamins*, 305 F. Supp. 2d at 105.

**3. The Stage of the Litigation Proceedings at the Time of Settlement**

Next, the Court considers the stage of the litigation at the time of settlement. This case has settled fairly early in the litigation process. However, the parties have had the opportunity to conduct informal discovery, including the exchanging of payroll data, damages calculations and other information necessary to facilitate negotiations. Pls.' Mot. at 2-3. It is well-settled that further proceedings and "formal discovery is not . . . necessarily required . . . for final approval of a proposed settlement." *Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20, 26 (D.D.C. 2011);

*see also Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 62 (D.D.C. 2010) (approving of settlement where "the parties reached a settlement agreement before formal discovery began" but "Plaintiffs' counsel conducted significant factual investigation into possible class claims and the financial situation of [the defendant] prior to the mediation."). The parties represent that informal discovery was sufficient for them to assess the merits of their respective cases. Accordingly, the Court finds that the settlement "does not 'come too early to be suspicious nor too late to be a waste of resources' but is rather 'at a desirable point in the litigation for the parties to reach an agreement and to resolve these issues without further delay, expense, and litigation.'" *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 117 (D.D.C. 2007) (quoting *In re Vitamins*, 305 F. Supp. 2d at 105).

### 4. The Reaction of the Class

As stated above, after the Court granted preliminary approval of the proposed settlement, class counsel sent a Court-approved notice of the settlement to the class members, informing them of their ability to object to the settlement. *See* Affidavit of Michelle Banker. No such objections were lodged with counsel, and no objections were presented at the Court's May 22, 2017 fairness hearing or thereafter. The absence of any objections to the proposed settlement weighs in favor of approval.

### 5. The Opinion of Experienced Counsel

Finally, the opinion of "experienced and informed counsel should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *In re Lorazepam & Clorazepate Antitrust Litig.*, No. 99MS276(TFH), 2003 WL 22037741, at *6 (D.D.C. June 16, 2003). Counsel for both parties in this matter believe the settlement to be fair, reasonable and adequate, which further weighs in favor of granting approval.

Having considered the above factors, the Court finds that the proposed class settlement is fair, adequate and reasonable and is not the product of collusion between the parties. Accordingly, the Court will grant final approval of the settlement.

## C. Attorneys' Fees and Costs

The Court also finds that the payment to class counsel called for in the proposed settlement in particular is reasonable and will be approved. "Courts have a duty to ensure that claims for attorneys' fees are reasonable," *Trombley*, 826 F. Supp. 2d at 204, and "the fact that the attorney's fees are structured into the settlement agreement does not excuse the Court from examining whether the attorney's fees agreed upon as a part of the settlement are fair, reasonable, and adequate," *Alvarez*, 303 F.R.D. at 165.

The Court has examined the request for attorneys' fees in this case and finds it reasonable. The proposed settlement calls for an $89,000 payment of attorneys' fees and costs to class counsel. This represents approximately 19% of the overall settlement amount, or approximately 24% of the amount to be paid to the class members. It also represents less than half of what Plaintiffs assert counsel has actually incurred thus far prosecuting this matter. Plaintiffs represent that as of May 3, 2017, class counsel has incurred $191,751 in attorneys' fees and $2,766 in expenses in the process of, among other things, investigating Plaintiffs' claims, interviewing Plaintiffs, researching legal issues, drafting pleadings and negotiating the proposed settlement. *See* Pls.' Mot. at 15-16; *see also* Declaration of Michelle Banker, ECF No. 37-4 (calculating attorneys' fees based on *Laffey* Matrix rates). No class member has objected to the proposed payment to class counsel. The Court concludes that it is reasonable and will be approved.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' [37] Consent Motion for Final Approval of Settlement is GRANTED. An appropriate Order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge